UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES KENNETH McAULEY, ) | |
| TERRENCE FRANCES McAULEY, ) | |
| MATTHEW REDDEN McAULEY, ) | |
| AIDAN PAUL McAULEY, KATHLEEN ) | |
| ANNE McAULEY, MARY FRANCES ) | |
| BARZEE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01826 AGF |
| ) | |
| FEDERAL INSURANCE COMPANY, ) | |
| CHUBB GROUP OF INSURANCE ) | |
| COMPANIES, ANHEUSER-BUSCH ) | |
| EMPLOYEES BENEFITS TRUST, and ) | |
| ANHEUSER-BUSCH COMPANIES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' joint motion to dismiss the complaint for failure to state a claim.[1] Plaintiffs brought this action pursuant to the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), as the beneficiaries of Terry McAuley. Mr. McAuley, as an employee of Defendant Anheuser Busch Companies, Inc. (Anheuser Busch), was covered under two ERISA-governed accident insurance policies issued by Defendant Federal Insurance Co. Plaintiffs challenge the denial of benefits, totaling $1,130,000, following Mr. McAuley's death from pulmonary embolisms that formed in his legs during an extended airplane flight.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Defendants argue that Plaintiffs fail to state a claim because (1) Mr. McAuley's death was not caused by an accident, as required by the policies' coverage clauses, and (2) Mr. McAuley's death resulted from a disease or bodily malfunction, which the policies excluded from coverage. Plaintiffs attached copies of the two insurance policies to their complaint. For the reasons set forth below, Defendants' motion shall be granted.

## BACKGROUND

**The Insurance Policies**

As an employee of Anheuser Busch, Mr. McAuley was provided with two "Blanket Accidental Insurance" policies, each of which contains the following coverage clause: "We will pay the applicable **Benefit Amount** if an accident results in a **Loss** [defined as including the Accidental Loss of life] not otherwise excluded. The accident must result from a covered **Hazard** and occur during the policy period. The **Loss** must occur within one (1) year of the accident."

The "Hazards" section of each policy states: "The following are the **Hazards** during which coverage applies." One policy, which the parties reference as the Accident Policy (Doc. #1-4, hereinafter "Policy A"), carries an applicable benefit amount of $130,000 (Mr. McAuley's annual salary at the time of his death) for accidental loss of life. Policy A lists two covered Hazards: "24 Hour Business and Pleasure," Form No. 44-02-0896 (01/95); and "Common Carrier Business and Pleasure," Form No. 44-02-0928 (01/95). The other policy, which the parties reference as the Business Travel Accident Policy (Doc. #1-5, hereinafter "Policy B"), carries an applicable benefit amount of $1,000,000, or a multiple of the employee's salary, for accidental loss of life. Policy B

2

lists three covered Hazards: "24 Hour Business and Pleasure," Form No. 44-02-0896 (01/95); "Business Travel," Form No. 44-02-1381 (08/96); and "Felonious Assault." The "Felonious Assault" Hazard is clearly not applicable.[2]

Both policies define "Hazard" as "the covered circumstances for which this insurance is provided as stated in Section III of the Declarations, Hazards, and described in the Hazards form." The Hazard form for the "24 Hour Business and Pleasure" Hazard, applicable to both policies, defines that Hazard to mean "all circumstances, subject to the terms and conditions of this policy, to which the Insured Person may be exposed." Policy B at 22.[3] The Hazard form for the "Common Carrier Business and Pleasure Hazard" in Policy A defined this Hazard to mean "the circumstances, subject to the terms and conditions of this policy, arising from and occurring while the Insured Person is in, entering, exiting or being struck by a conveyance operated by a common carrier . . . ."

The Hazard form for the "Business Travel" Hazard in Policy B states as follows:

24 Hour Business Travel Hazard means all circumstances, subject to the terms and conditions of the policy, arising from and occurring while the Insured person is traveling on assignment by or at the direction of the policyholder [Anheuser Busch]."

Coverage begins at the actual start of a trip whether the point of origin is from the Insured Person's residence or regular place of employment,

---

[2] From a review of Policy B, it does not appear that the "24 Hour Business and Pleasure" Hazard in this policy applied to Mr. McAuley, because it appears to be limited to officers, and he is nowhere identified as an officer of Anheuser Busch. The parties did not address this issue, however, and the Court's analysis is the same regardless of whether Plaintiffs assert coverage for this Hazard under Policy B.

[3] The copy of Policy A, which Plaintiffs attached to complaint, does not include this Hazard form, however a copy of this form, which bears the same number as referenced in Policy A, is included in Policy B. (Doc. Nos. 1-4 & 1-5).

whichever occurs lasts. Coverage ends immediately upon return to the Insured Person's residence or regular place of employment, whichever occurs first.

Policy B at 5.

Both policies include under Extensions of Coverage, "Exposure," stating: "Accident includes unavoidable exposure to elements arising from a covered Hazard." Both policies also contain the following "Disease or Illness" exclusion from coverage: "This insurance does not apply to [accidental loss of life] caused by or resulting from an Insured Person's . . . physical illness, disease, . . . or bodily malfunctions."

**The Insured Person's Death**

According to the complaint, on June 28, 2004, Mr. McAuley traveled from Dublin to St. Louis, returning from a business trip as part of his work for Anheuser Busch. Mr. McAuley left Dublin at 2:45 p.m. local time and arrived in St. Louis at 9:00 p.m. central standard time, comprising an approximately 11-hour trip. After arriving home, Mr. McAuley retired for the evening. The next morning it was discovered that he had died. An autopsy revealed that Mr. McAuley had died from an extensive and massive acute bilateral pulmonary thromboemboli that was the result of embolisms, or blood clots, that had developed in his legs during his extended airplane flight. These facts are not in dispute.

Plaintiffs assert in the complaint that Mr. McAuley's death was accidental "in that it was a sudden and unexpected occurrence that occurred as a result of" the airplane flight. Plaintiffs further assert that they provided Defendants with a complete proof of loss, but that Defendants denied coverage for Mr. McAuley's death on the grounds that

4

the death was not accidental and that it was excluded from coverage, having been caused by disease, illness, or bodily malfunction. Plaintiffs state that they filed an administrative appeal and that the 60-day period allowed for a decision elapsed.

**Arguments of the Parties**

Defendants argue that although Mr. McAuley's death may have been sudden and unexpected, it did not result from an accident, as required by the language of the coverage clauses at issue. Defendants argue that Mr. McAuley's body "simply reacted in a particular negative manner to a wholly voluntary, ordinary and unexceptional event -- an international air flight," and that thus, his death was not caused by an accident but was an "unfortunate unforeseen result of a normal occurrence." Defendants note that it is undisputed that nothing "by way of an 'accident' (meaning anything fortuitous, unexpected, unusual . . .) happened on the flight to cause Mr. McAuley to develop the blood clots." Defs.' Mem. at 9.

Defendants cite to Air France v. Saks, 470 U.S. 392 (1985), a case brought under Article 17 of the Warsaw Convention, which makes air carriers liable for injuries sustained by a passenger "if the accident which caused the damage so sustained" took place on board the aircraft. The plaintiff in that case felt severe pressure in one ear as the jetliner she was abroad landed, and shortly thereafter she was diagnosed with permanent hearing loss in that ear. She sued the airline alleging that her injury was caused by the negligent operation of the jetliner's pressurization system. The Supreme Court ruled that cabin pressure changes did not qualify as an "accident," holding that liability under Article 17 arises only if a passenger's injury is caused by an unexpected or unusual event

5

or happening that is external to the passenger, and not where the injury results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft. Id. at 405.

Defendants further argue that Mr. McAuley's death resulted from a disease or bodily malfunction, and as such, coverage was specifically excluded under the policies.

In response, Plaintiffs argue that the meaning of "accident" is much broader than asserted by Defendants. Plaintiffs argue that when the terms of each policy are read together, they provide that "an 'accident' includes unavoidable exposure to elements arising from all circumstances to which the insured may be exposed." Pls.'s Mem. at 6. They maintain that under this "extraordinarily broad" policy language, Mr. McAuley's death was accidental in that it was sudden and unexpected, caused by blood clots which resulted from his exposure to the conditions he encountered on his extended airline flight, including the element of prolonged immobility, or "stasis." Plaintiffs argue that Mr. McCauley's "unavoidable exposure to such conditions arising from his airline travel constitutes an accident under the express terms of the polic[ies]." Air France, they assert, is not instructive as it was not an ERISA case, did not involve an insurance policy, and concerned different language than that in the present case.

Further, Plaintiffs argue that the prevailing federal common law of ERISA rejects the distinction erected by Defendants between "death by an accidental means" and "accidental death." Plaintiffs rely upon a case from the First Circuit, Wickman v. Northwestern National Insurance Co., 908 F.2d 1077 (1st Cir. 1990), which held that a death is accidental, for purposes of an ERISA accident insurance policy, when the insured

reasonably, both subjectively and objectively, does not expect it to occur. Id. at 1088-89 (death from a 40-50 foot fall from a bridge was not accidental where insured climbed over guardrail and suspended himself by hanging onto guardrail with one hand; "a reasonable person . . . would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct"). Plaintiffs argue that under this test, Mr. McAuley's death was accidental because it can fairly be assumed that he did not subjectively believe that his international flight would kill him, and this expectation was reasonable.

With respect to the exclusion from coverage for disease or bodily malfunction, Plaintiffs contend that application of this exclusion would render the coverage for an "unavoidable exposure" meaningless. Citing to Paulissen v. United States Life Insurance Co., 205 F. Supp. 2d 1120 (C.D. Cal. 2002), Plaintiffs also assert that Mr. McAuley's pulmonary embolism did not arise from an organic or pre-existing condition, but from the conditions he experienced on the extended air flight, and thus the exclusion is not applicable.

Defendants reply that the "Exposure" extension does not expand coverage to eliminate the explicit requirement that a covered loss be the result of an accident. They argue that the term "elements" in this context refers to severe weather conditions, and that having to sit during a long air flight does not constitute "exposure to elements." Defendants further argue in reply that the Wickman test is inapplicable here because the plain language of the policies' coverage clauses requires that a loss be the result of an accident.

Plaintiffs argue in a surreply that Defendants' analyses of the "Exposure" extension and of Wickman were not raised in the claim-denial process, and as such constitute impermissible post-hoc rationales for denying coverage, which the Court should ignore. Plaintiffs argue that it would be inappropriate for the Court to grant Defendants' motion to dismiss without the administrative record before the Court so that the Court could ascertain whether these arguments had been raised by Defendants in the claim denial process. Plaintiffs again assert that the Wickman test should be applied here to find in Plaintiffs' favor.

### DISCUSSION

In considering Defendants' motion to dismiss, the Court views the allegations in the complaint as true, and views the facts in the light most favorable to Plaintiffs; dismissal is appropriate only if it appears that Plaintiffs can prove no set of facts that entitle them to recovery. See Miller v. Pilgrim's Pride Corp., 366 F.3d 672, 673 (8th Cir. 2004). A denial of benefits under an ERISA plan "should be reviewed de novo, unless the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 966 (8th Cir. 2004). Here, Plaintiffs assert that de novo review is warranted, with no deference accorded the administrative decision, as the policies do not provide for any level of discretion on the part of the plan administrator to interpret the plan or determine eligibility. The Court agrees.[4]

---

[4] Defendants ask the Court to assume that de novo review, which is more favorable to Plaintiffs, is appropriate at this stage of the proceedings.

When conducting de novo review of the denial of ERISA-governed benefits, a court looks to federal common law, rather than state law, to construe disputed terms in a plan. King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 998 (8th Cir. 2005) (en banc). A court may, however, look to state law for guidance to the extent that such law does not conflict with the provisions of ERISA. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995); Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 154 (8th Cir. 1990). Under the federal common law that has developed in this area, when reviewing an ERISA-governed insurance policy de novo, the policy terms should be accorded their "ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." Adams v. Cont'l Cas. Co., 364 F.3d 952, 954 (8th Cir. 2004); see also Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir. 1996).

Courts should generally construe any disputed language in an ERISA-governed insurance policy without deferring to either party's interpretation. Melvin v. Yale Indus. Prods., Inc., 197 F.3d 944, 948 (8th Cir. 1999); Brewer, 921 F.2d at 154. If the language of the policy is deemed ambiguous, extrinsic evidence may be considered. Bond v. Cerner Corp., 309 F.3d 1064, 1068 (8th Cir. 2002). Ambiguities should be construed against the drafter "only if, after applying ordinary principles of construction, giving language its ordinary meaning and admitting extrinsic evidence, ambiguities remain." Delk v. Durham Life Ins. Co., 959 F.2d 104, 106 (8th Cir. 1992) (per curiam). In addition, "under federal common law a contract should be interpreted as to give meaning to all of its terms -- presuming that every provision was intended to accomplish some

9

purpose, and that none are deemed superfluous." Harris v. The Epoch Group, L.C., 357 F.3d 822, 825 (8th Cir. 2004).

Here, as Defendants maintain, the plain language of the coverage clauses in the insurance policies requires that an "accident" result in the accidental loss of life, for benefits to be paid. Plaintiffs argue that an "accident" under the policies "includes unavoidable exposure to elements arising from all circumstances to which the insured may be exposed." Plaintiffs are reading the phrase pertaining to the unavoidable exposure to elements as a substitute for the word accident, rather than as an extension of coverage -- as expressly stated in the policies. But even reading the policies as Plaintiffs urge, there was no "accident" here as Mr. McCauley was not "exposed" to anything. The Court finds the argument that Mr. McCauley was "exposed" to "stasis" to be meaningless. Nor was the exposure "unavoidable." Nothing prevents an airline passenger from moving around or getting up and walking during the course of a long flight.

Furthermore, this argument too broadly construes the word "elements." The Court believes that the only fair reading of this word in the context in which it appears is that it refers to "elements" such as wind, cold, sun, and not sitting in an airplane seat for the duration of a long flight. As Defendants argue, Plaintiffs' reading of the policies expands "accident" to include practically everything the insured experiences while covered.

In addition, Plaintiffs' argument does not deal with the qualifier, "subject to the terms and conditions of this policy," which appears after the term "all circumstances."

Such terms and conditions would include the exclusion for bodily malfunction. As discussed more fully below, the Court finds unpersuasive Plaintiffs' arguments that Mr. McCauley's pulmonary embolism was not a bodily malfunction. After all, other passengers on the same flight did not develop fatal pulmonary embolisms.

The Court also concludes that the Wickman "highly likely to occur" test is not applicable to this case. In King, 414 F.3d at 1001-02, the Eighth Circuit did not definitively adopt the Wickman test, but rather ordered that the case be returned to the ERISA plan administrator for reevaluation of the claim for accidental death benefits under the administrator's most recent interpretation of the Wickman standard, which the insurance company asserted should be applied to deny benefits where the decedent was killed while driving his motorcycle in a highly intoxicated state. The present case is different from the Wickman line of cases,[5] in that here the insured took no action that

---

[5] See, e.g., Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1453 (5th Cir. 1995) (death from autoerotic asphyxiation resulted from "bodily injury caused by an accident" and, therefore, was covered by ERISA accidental death insurance policy; insured's autoerotic conduct did not risk death to substantial certainty, and his death thus could be deemed an accident); McAfee v. Transamerican Occidental Life Ins. Co., 106 F. Supp. 2d 1331, 1341-42 (N.D. Ga. 2000) (insured's death was not accidental, precluding recovery under ERISA insurance policy providing benefits for "losses resulting from bodily injuries caused by an accident," where insured was shot and killed by police after fleeing arrest and brandishing a weapon at officers; a reasonable person would have known that death or serious injury was a likely result of actions); Walker v. Metro. Life Ins. Co., 24 F. Supp. 2d 775, 781 (E.D. Mich. 1997) (insured did not "die . . . as the result of an accident," as required for coverage under an ERISA death and dismemberment insurance policy, where death resulted from driving at twice the legal limit while intoxicated; "a reasonable person in the decedents shoes would have known that driving while intoxicated at twice the legal limit was highly likely to result in serious injury or death"). In each of these cases, the insured engaged in some affirmative conduct that increased the risk of death beyond that of ordinary life; the question was how great that risk became. Here the insured took no such action.

subjected him to a risk of death beyond that of ordinary life, such as hanging from a bridge with one hand or driving a motorcycle while highly intoxicated. Mr. McAuley took an international airline flight. As Defendants state, his death was not caused by an accident, nor was it "accidental," but was an unfortunate occurrence which happened during a normal event of daily living.

      The Court believes that the decision in Air France supports Defendants' position in the present case. The distinctions noted by Plaintiffs between Air France and the present case, namely that Air France is not an ERISA case, does not involve an insurance policy, and involves different language than that in the policies here, dictates that Air France is not controlling, but the Supreme Court's reasoning and analysis is certainly instructive. Indeed, new support for Defendants' position is provided by a more recent Supreme Court case decided under Article 17 of the Warsaw Convention, Olympic Airways v. Husain, 540 U.S. 644 (2004). The passenger in that case died from an asthma attack during an airplane flight in which he was seated three rows in front of the smoking section. A flight attendant had three times refused to assist in moving the passenger's seat. The Court held that the flight attendant's conduct constituted an "accident" under Article 17. The Court held that for purposes of the "accident inquiry," a plaintiff "need only be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." Id. at 654. Here, Plaintiffs have not alleged in their complaint, nor asserted in any of their memoranda, any unusual or unexpected event external to the decedent, over which the decedent had no control. Unlike the decedent in Olympic Airways, there was nothing to prevent Mr. McAuley from walking during his

12

flight.  In sum, the Court concludes that it was not an "accident" that resulted in Mr. McAuley's death, as required by the coverage clauses of the insurance policies at issue.

In addition, the Court finds that coverage is excluded by the terms of the policy which exclude coverage for any accidental loss of life "caused by or resulting from an Insured Person's . . . physical illness, disease, . . . or bodily malfunctions."  The Court is unpersuaded by Plaintiffs' citation to the Paulissen case in connection with the policy exclusions at issue here.  In Paulissen, the insured died from pulmonary edema while on a mountain trek.  The policy language excluded coverage for any death "caused directly, indirectly, wholly or partly by a physical or mental sickness . . . ," which the court interpreted as requiring a "pre-existing illness."  Accordingly, the court held that the exclusion did not apply.  Paulissen, 205 F. Supp. 2d at 1128.  The language at issue here is quite different, excluding any "bodily malfunction," which in ordinary terms seems aptly to describe what occurred here.  Mr. McAuley's body functioned poorly when he remained inert for an extended period of time.  See Larkin v. Life Ins. Co. of N. Am., No. CV 02-B-1733-S, 2004 WL 3583102, at *7 n.5 (N.D. Ala. March 29, 2004) (detached retina "is unquestionably a bodily infirmity").  As such, the Court finds this case to be more like Hall v. Metropolitan Life Insurance Co., 398 F. Supp. 2d 494 (W.D. Va. 2005).  In Hall, which was an ERISA case, the court found that death from anaphylaxis resulting from a bee sting was excluded from coverage as a "death . . . caused or contributed by . . . bodily or mental infirmity."  Id. at 501.  Indeed, the language at issue here, which references a bodily malfunction, is even stronger than that

in Hall.[6]

Lastly, the Court rejects Plaintiffs' contention in their surreply that Defendants' arguments pertaining "exposure to elements" and the Wickman test are impermissible post-hoc rationales for denying coverage, i.e., rationales not relied upon in the claim-denial process. The cases relied upon by Plaintiffs for this proposition are cases which applied the abuse-of-discretion standard of review. See, e.g., King, 414 F.3d at 998-99; Pompe v. Cont'l Cas. Co., 119 F. Supp. 2d 1004, 1006 (W.D. Mo. 2000). Here, at Plaintiffs' own urging, the de novo standard of review applies. Furthermore, Defendants were responding to arguments raised by Plaintiffs in their response to the motion to dismiss. In applying de novo review, the Court has construed the disputed terms in the policies at issue, in accordance with federal common law developed under ERISA, as is appropriate. See King, 414 F.3d at 998.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss the complaint is **GRANTED**. [Doc. #11]

---

[6] Nor does Paulissen provide persuasive authority for coverage of the loss here, as an "accident." Relying on specific California case law, the court in Paulissen determined that the particular language at issue was ambiguous, requiring that it be construed against the insurer and read as an "accidental injury" policy. Such an interpretation required only a showing that the insured's death was unexpected. Paulissen, 205 F. Supp. 2d at 1128. The Court finds no such ambiguity in the language at issue here.

A separate Judgment shall accompany this Memorandum and Order.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2006.